IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:23-CR-193-P |
| JAMES PEABODY   (01) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

COMES NOW, the United States of America, by and through its undersigned counsel, and respectfully asks this Court to deny defendant James Peabody's Motion to Withdraw Plea of Guilty, ECF No. 146, and would show as follows:

## SUMMARY

Peabody's Motion to withdraw his plea of guilty should be rejected. Rule 11(d)(2)(B) was not designed to allow defendants to withdraw pleas simply because they later decide they made the wrong choice; rather, the Rule was designed to allow a defendant to "undo a plea that was unknowingly made at the time it was entered." *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984). The fundamental fact here is that Peabody's guilty plea was knowing, voluntary, and intelligent. Peabody's motion fails to plausibly allege otherwise. He has simply changed his mind long after entering it, and that is not enough for the Court to grant relief. Based on the purpose of Rule 11, the facts of this case, and the factors laid out in *Carr*, this Court should deny Peabody's request to withdraw his plea of guilty. *Id*. at 343–44.

## BACKGROUND AND FACTS

<u>Procedural History</u>

On Saturday May 6, 2023, James Peabody was arrested at DFW International Airport. (ECF No. 3.) Assistant Public Defender John Stickney was appointed to represent him after Peabody swore in his financial affidavit that he could not afford to retain counsel. (ECF No. 4-6, 10.) On May 30, 2023, the parties filed a joint motion to continue the time to indict in anticipation of a plea agreement. (ECF No. 3, 10.) To that end, on July 5, 2023, the government filed a felony information charging Peabody and two coconspirators with conspiracy to commit wire fraud (18 U.S.C. § 1349). (ECF No. 43.) Peabody and one coconspirator decided not to plead guilty at that time; consequently, on July 15, 2023, they were charged by superseding indictment, which contained two additional counts (18 U.S.C. § 1028A(a)(1)). (ECF No. 46.) Next, on July 24, 2023, Peabody retained new counsel, David Wright. (ECF No. 59-60, 66.) Approximately six weeks later, on August 30, 2023, Peabody pled guilty to one count of conspiracy to commit wire fraud, pursuant to a plea agreement. (ECF No. 478, 80.) Sentencing was set for December 14, 2023. (ECF No. 83.)

On August 30, 2023, the Honorable Hal Ray, Jr., promptly issued his report and recommendation that this Court accept Peabody's guilty plea, finding, among other things, that Peabody understood the nature of the charges and potential penalties, was competent, and "freely and voluntarily" entered his plea of guilty. (ECF No. 82.) Judge Ray, likewise, informed Peabody that he had 14 days to object to those findings.

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page 2**

(*Id.*)  Peabody lodged no objections.  On September 14, 2023, this Court issued an order accepting Judge Ray's Report and Recommendation regarding the guilty plea. (ECF No. 94.)

On October 25, 2023, the presentence report (PSR) was issued.  (ECF No. 104.) The PSR found that Peabody was a level 35 with a criminal history category II, yielding an advisory sentencing range of 188 to 235 months' imprisonment.  (PSR ¶ 121.)  In so concluding, the PSR unsurprisingly assessed Peabody for the loss amount, victim impact, sophisticated means, using means of identification, and two-levels for a leadership role. (PSR ¶¶ 65-76.)  Though he admitted that he was guilty of the offense as stipulated in the factual resume during his interview with the probation officer, he made false statements, minimized his criminal conduct, and shifted blame to others, thereby losing three points for acceptance of responsibility.  (PSR ¶¶ 51-63.)

After obtaining a continuance of the sentencing hearing, Peabody (through counsel) lodged 23 objections to the PSR on December 13, 2023, again minimizing and falsely characterizing his involvement in the offense.  (ECF No. 124.)  On December 13, 2023, the government filed a detailed response to those 23 objections.  (ECF No. 125.)  On January 23, 2024, Peabody filed a nine-page response to both the PSR and the government's response to his objections to the PSR, *pro se*, quarreling with the facts as presented in those documents and pressing faulty legal positions.  (ECF No. 94.) Notably, in that pleading, Peabody disputes the PSR's finding that he has not accepted responsibility, claiming that he has done so; thus, maintaining his guilt in the commission

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page  3**

of the offense.  (*Id*.)  On January 30, 2024, this Court issued an order tentatively finding that Peabody's 23 objections to the PSR were frivolous and that he should not receive a reduction for acceptance of responsibility.  (ECF No. 136.)  The Court also expressed concerns about accepting the plea agreement because of the seriousness of the criminal conduct and Peabody's lack of acceptance of responsibility.  (*Id*.)  Peabody, through counsel, then filed motions to continue the sentencing hearing and to withdraw his guilty plea on January 30, 2023, and February 11, 2024, respectively.  (ECF No. 137, 146.)  Though the Court initially continued the sentencing hearing until February 13th, the hearing date was vacated by Court order for the government to respond to Peabody's motion to withdraw his guilty plea by February 20, 2024.  (ECF No. 94.)

### The Plea Agreement and Rearraignment Hearing

The plea agreement, which Peabody and his counsel signed on August 16, 2023, specifically stated that the guidelines were advisory and that the sentence could not be predicted with certainty.  (ECF No. 80 at ¶ 4.)  The plea agreement likewise stated that the Court had sole discretion to sentence the defendant so long as the sentence was within the statutory maximum, and that "Defendant will not be allowed to withdraw Defendant's plea if the Defendant's sentence is higher than expected."  (*Id.* at p. 7-8.)  On a separate signature line, Peabody affirmed that he read the plea agreement, carefully reviewed it with his attorney, understood it, and voluntarily agreed to it.  (*Id.*)  Similarly, Peabody's defense attorney affirmed by signature that he carefully reviewed every part of the plea agreement with his client and believed that his client's decision to enter the plea

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page  4**

agreement was informed and voluntary.  (*Id.*)  The plea agreement was signed two weeks before Peabody actually entered his guilty plea.

At the rearraignment hearing on August 30, 2023, Peabody was sworn and Judge Ray explained the process of pleading guilty and the consequences.  (ECF No. 154 at 8, 17.)  The judge stated that the guilty plea had to be purely voluntary and that a defendant should plead guilty only because he is guilty and not for any other reason. (ECF No. 154 at 17.)  Peabody testified that he understood the consequences of pleading guilty and that he was not induced or pressured to plead guilty.  (*Id.*)  He answered the questions related to voluntariness, including that he had a master's degree, had no addictions, was not under the influence of alcohol or drugs, had no emotional disability, and was of sound mind.  (ECF No. 154 at 17-25.)  His attorney, Mr. Wright, likewise stated that Peabody was competent and that he believed the guilty plea was knowing and voluntary.  (ECF No. 154 at 25-26.)  Peabody testified that he discussed the sentencing guidelines with his attorney, and Judge Ray explained that the Court determines the guideline range but will not be able to do so until after the PSR has been issued.  (ECF No. 154 at 18-19.)  Peabody acknowledged that if his sentence was more severe than expected, that he still remained bound by his plea of guilty.  (ECF No. 154 at 57.) During the hearing, Peabody confirmed that he read and understood the factual resume and that the facts were correct.  (ECF No. 154 at 63-65.)  Mr. Wright stated that he believed that Peabody's decision to plead guilty was an informed one.  (ECF No. 154 at 69.)  After which, Judge Ray found that Peabody was fully competent and capable of

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page  5**

entering an informed plea and that his doing so was knowing and voluntary. (*Id*.) In concluding the hearing, Judge Ray informed Peabody that his degree of cooperation with the probation officer in preparing the PSR could be a factor in the severity of his sentence. (ECF No. 154 at 69.) Finally, Peabody was told that he had 14 days in which to object to Judge Ray's findings. (ECF No. 154 at 71.)

Six months later, and long after this Court accepted the guilty plea, Peabody filed a motion to withdraw his guilty plea, through counsel, based on a single *Carr* factor— that his guilty plea was not knowing and voluntary. On February 16, 2023, counsel filed a motion to withdraw as Peabody's attorney, which remains pending. (ECF No. 159.)

## LEGAL STANDARD FOR WITHDRAWAL OF GUILTY PLEA

After a court accepts a defendant's guilty plea, a district court may grant a motion to withdraw that plea before a defendant is sentenced only if the defendant shows a "fair and just reason." FED.R.CRIM.P. 11(d)(2)(B). There is no absolute right to withdraw a guilty plea, and the defendant bears the burden to establish a "fair and just reason" for withdrawal. *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003); *United States v. Grant*, 117 F.3d 788, 789 (5th Cir. 1997). There are seven factors the district court should consider when applying the "fair and just" standard:

> (1) whether the defendant asserted his innocence,
> (2) whether withdrawal would prejudice the government,
> (3) whether the defendant delayed in filing the withdrawal motion,
> (4) whether withdrawal would inconvenience the court,
> (5) whether close assistance of counsel was available,
> (6) whether the plea was knowing and voluntary, and
> (7) whether withdrawal would waste judicial resources.

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page 6**

*Carr*, 740 F.2d at 343–44. "No single factor or combination of factors mandates a particular result." *United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991). In applying the *Carr* factors, courts are to consider the totality of the circumstances, and "the trial court's decision regarding a withdrawal motion must be accorded 'broad discretion.'" *Carr,* 740 F.2d at 344. "A motion to withdraw a guilty plea is committed to the discretion of the district court and its decision will not be disturbed absent an abuse of discretion." *United States v. Still*, 102 F.3d 118, 123 (5th Cir.1996). A "district court abuses its discretion if it denies a defendant's motion to withdraw a guilty plea based on an error of law or a clearly erroneous assessment of the evidence." *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014) (internal quotation marks and citations omitted).

Further, "[a]llowing [a defendant] to withdraw his plea without a fair and just reason would defeat the purpose of the plea hearing and diminish the significance of entering pleas." *United States v. Adam*, 296 F.3d 327, 332 (5th Cir. 2002), citing *Grant*, 117 F.3d at 791. In holding that a guilty plea may not be withdrawn unless the defendant provides a "fair and just reason," the Supreme Court explained that "[a]fter the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea," allowing "the defendant to withdraw his guilty plea simply on a lark . . . would degrade

the otherwise serious act of pleading guilty into something akin to a move in a game of chess."  *United States v. Hyde*, 520 U.S. 670, 677 (1997).

"The defendant bears the burden of establishing a fair and just reason for withdrawing his plea."  *Powell*, 354 F.3d at 370 (citing *United States v. Brewster*, 137 F.3d 853, 858).  "The district court's decision to permit or deny the motion is based on the totality of the circumstances."  *Id*. (citing *Brewster*, 137 F.3d at 858).  And "the district court is not required to make findings as to each of the *Carr* factors."  *Id*.

## ARGUMENT

Peabody is trying to do exactly what the Supreme Court in *Hyde* cautioned against; his attempt to manipulate the plea process should be rejected accordingly. Although Peabody raises only one *Carr* factor, that of voluntariness, the government will also address the six remaining factors.  As detailed below, viewed in their totality, the *Carr* factors weigh heavily against allowing Peabody's bid to withdraw his plea.

(1)     *Carr* Factor One: Peabody does not assert his of innocence.

A mere claim of innocence does not suffice to warrant the granting of a motion to withdraw a guilty plea.  *See Carr*, 740 F2d. at 344.  "Otherwise, the mere assertion of legal innocence would always be a sufficient condition for withdrawal, and withdrawal would effectively be an automatic right."  *Id*.  "Under the *Carr* framework, a defendant must not only assert his innocence, but also provide a 'substantial supporting record' for this assertion in order to support his motion to withdraw."  *United States v. Strother*, 977 F.3d 438, 444 (5th Cir. 2020) (citing *United States v. Clark*, 931 F.2d 292, 295 (5th Cir.

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page  8**

1991)).

Here, Peabody rightly chose not to assert his innocence. Nothing in the record would have supported such an assertion and he proffers no facts suggesting otherwise. *See United States v. Bond*, 87 F.3d 695, 701 (5th Cir. 1996) (noting that the defendant "has asserted his actual innocence, but under *Carr*, this factor is insufficient on its own in the total absence of evidence to support the assertion); *United States v. Ambrose*, 1998 WL 699039, at *3 (5th Cir. 1998) (unpublished) (citing *Bond* and holding that "[b]ecause there was no evidence to support his assertion of innocence, this factor weighed in favor of the Government"). *See also United States v. London*, 568 F.3d 553, 563 (5th Cir. 2009) (concluding that the district court did not err by denying a motion to withdraw where the defendant "blankly asserted his innocence, providing no facts to support the change of heart").

The first factor thus weighs entirely in the government's favor.

(2)     *Carr* Factor Two: Allowing Peabody to withdraw his plea would prejudice the government.

Conceding this factor as well, Peabody offers no evidence or argument on this point. The defendant was arrested in May (nine months ago), indicted in July (seven months ago), and pled guilty in August (six months ago). The government has expended considerable resources in filing an information, later filing a superseding indictment, drafting two sets of plea papers, responding to 23 objections to the PSR, as well as working around multiple sentencing settings. In reliance on Peabody's plea, moreover,

the government has adjusted its case strategy and plea deals with other codefendants. More importantly, the victims believe the case has been resolved. Should the defendant proceed to trial, some of the victims, who live in precarious circumstances as it is, would be required to travel from out of state to testify at the trial.[1]

Allowing withdrawal of his plea now, with no legitimate justification, would reward Peabody's gamesmanship. Peabody tried to manipulate the probation officer by minimizing his conduct, only to learn upon issuance of the PSR that his machinations resulted in a higher sentencing range, not a lower one. Undaunted, he lodged 23 specious objections to the PSR to try to persuade the Court that his involvement in the offense was limited. That strategy backfired as well when, on January 30th, this Court issued an order tentatively concluding that Peabody should not receive a reduction for acceptance of responsibility.[2] Granting Peabody's motion would not only prejudice the

---

[1] *See Strother*, 977 F.3d at 447 (holding that the district court did not clearly err in finding that the "efforts and manpower" that would be required for trial if the plea was withdrawn constituted prejudice to the government); *United States v. Sims*, 340 F.App'x 959, 962 (5th Cir. 2009) (holding that the government would be prejudiced because it would have to prepare for trial on four counts); *but see United States v. Neal*, 509 F.App'x 302, 311 (5th Cir. 2013) (treating time spent on trial preparation as "probably" inconvenience rather than prejudice, but holding that the district court did not clearly err in finding that this factor favored the government).

[2] There, the Court also tentatively concluded that it might reject the plea agreement because it did not reflect the seriousness of the offense, presumably because the agreement required dismissing two counts of aggravated identity theft. Though the plea agreement limits the defendant's exposure to 20 years, as opposed to 24 years without it, the guidelines remain the much the same even after a trial. This is because convictions on the identity theft counts would mean that the defendant would not receive the two-level increase in his guidelines calculation for using means of identification, USSG ¶ 2B1.1(b)(11). (PSR ¶ 69.) Currently, because Peabody was not awarded the reduction for acceptance of responsibility, his advisory guidelines range is 188 to 235 months. (PSR ¶ 121.) After a trial, the government believes the range would be reduced to 151 to 188 months, without the section 2B1.1(b)(11) enhancement. Adding the mandatory 24-month consecutive term for aggravated identity theft to that range, however, would increase his sentencing range to 175 to 212 months. Running both counts of aggravated identity theft

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page 10**

government in this case and impose upon vulnerable victims, it would open the floodgates to defendants previewing their PSRs and moving to withdraw if the calculation is higher than expected. Pleading guilty is not a game of high-stakes chess. Criticizing such gamesmanship, the Supreme Court cautioned that "the otherwise serious act of pleading guilty," should not be degraded "into something akin to a move in a game of chess." *Hyde*, 520 U.S. at 677.

This factor weighs against Peabody.

(3)   *Carr* Factor Three: Peabody's delay in filing his motion weighs against him.

Peabody waited for six months to move to withdraw his guilty plea, long after the PSR was issued. In *Carr*, the Court found that a delay of *22 days* was not "promptly filed." 740 F.2d at 345. Here, the defendant waited months, meaning this factor weighs strongly against Peabody. As the *Carr* Court noted, the purpose of the Rule "is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Id*. And that is exactly what happened in this case, except that it did not take several weeks. It took months.

Rule 11 was designed to allow a defendant to "undo a plea that was unknowingly made at the time it was entered," not to give a defendant the chance to change his mind if he comes to believe he made a strategic error or has buyer's remorse. *Id*. Given the

---

consecutively would result in a guideline range of 199 to 237 months. Thus, the plea agreement not only does not compromise the sentencing guidelines, it eliminates litigation risk and the substantial burden to victims, who would be required to travel to Texas to testify.

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page  11**

excessive delay, this Court will not abuse its discretion if it denies the motion to withdraw. *See United States v. Adam*, 296 F.3d 327 (5th Cir. 2002) (no abuse of discretion where a defendant waited two weeks to move to withdraw the plea). *See also Carr*, 740 F.2d at 345 (affirming denial when the defendant waited three weeks); *United States v. Thomas*, 13 F.3d 151, 153 (5th Cir. 1994) (stating that a "six-week delay between entry of the plea and motion to withdraw is significant" and affirming denial of a motion to withdraw).

This factor weighs heavily against Peabody.

(4)  *Carr* Factors Four and Seven: Withdrawal would inconvenience the Court and waste judicial resources.

Peabody likewise does not address these two factors—whether the Court would be substantially inconvenienced and whether withdrawal would waste judicial resources, which therefore weigh against him. This Court already has sentenced two of Peabody's codefendants, who also pled guilty last summer. If Peabody were allowed to withdraw his plea and proceed to trial, these co-defendants could be called upon to provide more information about Peabody and potentially be called as witnesses, thus, increasing the likelihood they would have to be re-sentenced based on this additional cooperation with the government. Had the government known that Peabody would be seeking a trial, it likely would have sought to delay the sentencing of the co-defendants.

Peabody has failed to offer any evidence or argument on these factors, which must therefore weigh in the government's favor.

(5)     *Carr* Factor Five: Peabody received "close assistance of counsel."

Peabody likewise fails to contend that he lacked close assistance of counsel. "Determining whether a defendant received close assistance of counsel requires a fact-intensive inquiry." *United States v. McKnight*, 570 F.3d 641, 646 (5th Cir. 2009).   The Fifth Circuit has "previously found that close assistance of counsel was available where counsel negotiated a plea agreement, filed motions, discussed the case with the defendant, and explained the defendant's rights and the weight of the evidence, *United States v. Benavides*, 793 F.2d 612, 613-18 (5th Cir. 1986), and where counsel was available throughout the proceedings and the defendant expressed satisfaction with counsel, *United States v. Lord*, 915 F.3d 1009, 1015-16 (5th Cir. 2019)." *Strother*, 977 F.3d at 445.

There is no question that Peabody had the close assistance of counsel here.   At first, he was assisted by John Stickney, who advised him to plead guilty.   Peabody decided not to so.   Approximately a month after retaining David Wright, who also advised him to plead guilty, Peabody entered his guilty plea.   As described above, Peabody was thoroughly advised by Mr. Wright in his decision to plead guilty and the consequences of his plea.   Both Peabody and his attorney, moreover, affirmed by signature that Peabody read the plea agreement, they carefully reviewed it together, Peabody understood it, and Peabody voluntarily agreed to it.   Peabody likewise testified at the rearraignment hearing that he understood the consequences of pleading guilty and that he discussed the guidelines with his attorney.

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page  13**

This factor weighs heavily against allowing Peabody to withdraw his guilty plea.

(6)     *Carr* Factor Six: Peabody's's plea was knowing and voluntary.

Peabody makes a conclusory assertion that his plea was not knowing, voluntary, or intelligent.   He provides no specific facts or argument on this point.

For a guilty plea to be voluntary, knowing, and intelligent, the defendant must "understand the nature of the charges against him, the consequences of his plea, and the nature of the constitutional protections that he is waiving."   *United States v. Gardner*, 15 F.4th 382, 386 (5th Cir. 2021) (internal quotations and citations omitted)).   Courts "give significant weight to a defendant's sworn testimony that his plea is voluntary and uncoerced."   *Strother*, 977 F.3d at 446 (citing *Clark*, 931 F.2d at 295).   Indeed, "solemn declarations in open court carry a strong presumption of verity."   *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (addressing motion to withdraw guilty plea)).

Peabody's claim that his plea was not knowing and voluntary has no basis.   Judge Ray observed Peabody's behavior and demeanor on the day that he pled guilty and found that his plea was, in fact, knowing and freely and voluntarily made.   As discussed above, Judge Ray questioned Peabody before making his findings.   Peabody, who has a master's degree, attested under oath that he was of sound mind; that he understood the charges, the nature of the proceedings, and the consequences of pleading guilty; and that he was entering his guilty plea knowingly and voluntarily.   Approximately 14 days after

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page  14**

Judge Ray concluded that Peabody's plea should be accepted, this Court accepted it as well.

Here, Peabody baldly asserts that his plea was not "knowing and voluntary." The claim completely contradicts his prior written statements and oral testimony, and he proffers no facts upon which this Court could decide in his favor.

Not a single *Carr* factor weighs in his favor. Rather than evidencing some "fair and just" reason to withdraw his guilty plea, Peabody's motion does nothing more than show that he made a tough decision and has now changed his mind after seeing that he is facing a sentence more severe than he had hoped. That is simply not enough, and the Court should deny his motion.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court deny Peabody's motion to withdraw his guilty plea.

Respectfully Submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*s/ Nancy E. Larson*
NANCY E. LARSON
Assistant United States Attorney
D.C. Bar No. 430780
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Facsimile: 817-252-5455
Email: nancy.larson@usdoj.gov

**Government's Response to Defendant's Motion to Withdraw Guilty Plea - Page  15**

## CERTIFICATE OF SERVICE

      I hereby certify that on February 20, 2024, I electronically filed the foregoing Government's Response with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorney of record who has consented in writing to accept this Notice as service of this document by electronic means.

      *s/ Nancy E. Larson*
      NANCY E. LARSON
      Assistant United States Attorney